IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

BRADFORD FREELAND and )
CYNTHIA GAIL FREELAND, )
 )
      Plaintiffs, )
 )
vs. ) CIVIL NO. 06-4032-GPM
 )
ARVIN-MERITOR, INC., a corporation, and )
DAIMLERCHRSYLER CORPORATION, a )
corporation, )
 )
      Defendants. )

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

Following a four-day trial, a jury returned a verdict in favor of Plaintiffs, Bradford and Cynthia Gail Freeland, and against Defendants. Before the Court is Plaintiffs' motion for new trial or, in the alternative, a motion to alter or amend the judgment (Doc. 194), in which Plaintiffs seek a new trial on the issue of damages only pursuant to Federal Rule of Civil Procedure 59.

A new trial may be granted under Federal Rule of Civil Procedure 59(a), "where the verdict is against the weight of the evidence, the damages are excessive, or if for other reasons the trial was not fair to the moving party." *Mid-America Tablewares, Inc. v. MOGI Trading Co.*, 100 F.3d 1353, 1367 (7th Cir. 1996). Whether to grant a new trial rests within the discretion of the district judge. *Foster v. Cont'l Can Corp.*, 783 F.2d 731, 735 (7th Cir. 1986).

When a court considers a motion for new trial, it must give great deference to the jury's verdict. *Id*. In fact, "new trials granted because the verdict is against the weight of the evidence are

proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Latino v. Kaizer*, 58 F.3d 310, 315 (7th Cir. 1995).

Plaintiffs first argue that the damages awarded to each of them were inadequate and against the weight of the evidence. The Court finds no evidence to support this argument.

The jury awarded Mr. Freeland $15,000 in damages for his pain and suffering. The jury did not award Mr. Freeland any damages for loss of a normal life or for lost earnings. This verdict is not inconsistent with the evidence at trial. The Freelands each testified that Mr. Freeland was able to drive himself home on the day of the incident and that he continued to work for several days before seeking any medical treatment. They also testified that while Mr. Freeland was unable to work as a mechanic, he was able to work as a pastor at his community church for the past eight years. The testimony of Mr. Freeland's coworkers raised questions whether the incident occurred as Mr. Freeland described and whether the prop strut actually struck Mr. Freeland in the head at all. Furthermore, three treating physicians testified that they did not believe Mr. Freeland suffered from a traumatic brain injury, that none of the medical examinations or tests showed any objective evidence of such an injury, and that Mr. Freeland exhibited signs of malingering. In short, the jury did not think Mr. Freeland was seriously injured. There is no basis to conclude that the jury's award of damages for Mr. Freeland was inadequate or against the weight of the evidence.

So it is with Mrs. Freeland, who was only nominally successful. The jury found that she sustained no compensable damages and awarded her nothing. This is not inconsistent with the evidence at trial. Although Mrs. Freeland testified that her husband was unable to work, dress himself, administer his own medications, drive without supervision, or ride his motorcycle, she also

testified that she left him at home alone every day when she went to work. This contradicted Mrs. Freeland's early testimony that the only time she could leave him at home alone was when she went to the pharmacy to refill his prescriptions. Moreover, the jury was able to observe Mr. Freeland during the trial and obviously assessed his physical abilities differently. Given this evidence, there is no reason to conclude that the jury's verdict with regard to Mrs. Freeland was inadequate or against the weight of the evidence.

Plaintiffs next argue that the jury's verdicts are inconsistent. "As a rule, civil juries must return consistent verdicts." *Deloughery v. City of Chicago*, 422 F.3d 611, 617 (7th Cir. 2005). If possible, the Court must reconcile inconsistent verdicts, rather than overturn them. *Id*. A party claiming that the jury has returned inconsistent verdicts is not entitled to a new trial unless no rational jury could have brought back the verdicts that were returned. *Id*. When determining whether the jury's verdicts can be reconciled, the district court should look closely at its own instructions. *Id*.

In Instruction No. 21, the Court instructed the jury that if it found that Mrs. Freeland sustained damages, it could fix the amount of money which would reasonably and fairly compensate her for the "reasonable value of the services of her husband of which she has been deprived" and the "reasonable value of the society, companionship and sexual relationship with her husband of which she has been deprived." The jury was not required to believe that Mrs. Freeland was deprived of the services, society, companionship, or sexual relations of her husband as a result of the incident.

Plaintiffs cite two state cases in support of their argument, and to the extent state law is even applicable, they are easily distinguished. In *Manders v. Pulice*, 256 N.E.2d 330 (Ill. 1970), the jury returned a $6,000 verdict in favor of Mrs. Manders but returned a $0 verdict for her husband's loss of consortium claim. Although the Manders were awarded a new trial on appeal, the Supreme Court

of Illinois explained that the "evidence made clear that Mrs. Manders ... became unable because of her injuries to perform even simple household tasks for a period of at least five months." *Id*. at 333. There was also evidence that Mr. Manders suffered lost wages because he had to care for his wife during this period. *Id*. He testified that he was absent from work for a full week during his wife's hospitalization and also took 20 half-days in order to escort his wife to the doctor's office. *Id*. There was no challenge to this evidence except testimony by one of Mrs. Manders' physicians that she may have visited his office fewer times than the Manders had testified, and the Supreme Court of Illinois found that there remained clear proof of damage to Mr. Manders. *Id*. As such, it found that a new trial was warranted. *Id*.

The same is true with regard to *Casey v. Pohlman*, 555 N.E.2d 1221 (Ill. App. 1990). In *Casey*, the jury found in favor of Mr. and Mrs. Casey, but awarded damages only to Mr. Casey; no damages were awarded to Mrs. Casey for her loss of consortium claim. *Id*. at 1222. Again, the reviewing court found that the evidence clearly showed that the spouse had suffered a compensable loss. *Id*. at 1225. In this case, Mr. Casey injured his neck, head, and arm in a car accident and spent two weeks in the hospital. *Id*. at 1223. As a result, the 70-year-old farmer was unable to perform farming duties, was unable to play as actively with his grandchildren, was unable to ride horses, and had "no desire to go anywhere or do anything that would be pleasurable for [Mr. and Mrs. Casey together]." *Id*. at 1225. In granting a new trial on this issue, the Appellate Court stated that:

> [i]t cannot be ascertained with definiteness what the jury here intended by its verdict. The zero verdict could have meant that the jury did not feel Mrs. Casey sustained any damages as the result of the accident. However, we find that the record reflects that Mrs. Casey did, in fact, suffer loss of consortium as a result of the accident. The award of "0" damages is therefore against the manifest weight of the evidence.

*Id*. at 1226-27.

Those two cases are not like this case. Here the verdict form gave the jury the opportunity to award damages for the "reasonable value of the services of her husband of which she has been deprived" and the "reasonable value of the society, companionship and sexual relationship with her husband of which she has been deprived." There were contradictions in Mrs. Freeland's testimony regarding her claim, and the jury was at liberty to discount all of Mrs. Freeland's testimony based upon their assessment of Mr. Freeland's injuries and its impact on Mrs. Freeland. The jury did not believe Mrs. Freeland sustained any damages, and that ends the matter.

Plaintiffs next argue that the Court abused its discretion in refusing to submit jury instructions regarding permanency, future damages, and future loss of consortium. It is within the trial court's discretion to give or deny a jury instruction. *Brax v. Kennedy*, 841 N.E.2d 137, 144 (Ill. App. 2005). A party "needs to furnish 'some evidence' to earn a jury instruction." *Reed v. Union Pacific R. Co.*, 185 F.3d 712, 719 (7th Cir. 1999), *quoting LaFever v. Kemlite Co.*, 706 N.E.2d 441, 455 (Ill. App. 1998).

Under Illinois law, the Court should consider five factors to decide whether or not to admit evidence regarding permanency. *Soto v. Gaytan*, 728 N.E.2d 1126, 1133-34 (Ill. App. 2000). These factors include: (1) the length of time since the last examination; (2) the length of time the patient was in treatment with the treater whose proposed testimony is at issue; (3) the nature of the patient's injuries or condition; (4) the type of treatment received by the patient; and (5) whether a substantial change in the patient's condition has occurred between the time of the last exam and the date of trial. *Id*. In this case, the first and last factors are dispositive of the issue. First, Mr. Freeland had not been examined by his treating physicians for several years before the trial. In fact, the most recent

examination was in 2003, five years before trial.[1] Additionally, there was no evidence that there had been a substantial change in Mr. Freeland's condition between the time of the last exam and the date of trial. There was no reliable evidence regarding the permanency of any of Mr. Freeland's injuries, so jury instructions regarding permanency were inappropriate.

Plaintiffs last argue that the Court erred in entering judgment that Mrs. Freeland "recover nothing, the action be dismissed on the merits, and that defendants ... recover costs from the plaintiff, Cynthia Gail Freeland." "The power to award costs under Rule 54 is a matter within the sound discretion of the district court." *McGill v. Faulkner*, 18 F.3d 456, 459 (7th Cir. 1994). Because an element of Mrs. Freeland's claim was the existence of damages, Defendants are the "prevailing parties" with regard to her claim. As such, Defendants are entitled to costs pursuant to Rule 54.

In a nutshell, the jury was not impressed with Mr. Freeland's claimed injuries and did not believe Mrs. Freeland sustained any damages whatsoever.

Defendant DaimlerChrsyler has also filed a formal motion for costs (Doc. 195) pursuant to Federal Rule of Civil Procedure 68(d), which provides that "[i]f the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made." Plaintiffs did not respond to this motion.

DaimlerChrsyler made a $40,000 offer to Plaintiffs on May 23, 2008, to settle the case. Because the jury found against DaimlerChrsyler in the amount of $3,000, DaimlerChrysler is entitled to post-offer costs in the amount of $4,962. Rule 68 does not give the Court discretion whether to award the defendant costs where an offer has been made and refused, and the judgment obtained by

---

[1] The Court excluded the testimony of Dr. Parks with regard to permanency pursuant to Federal Rule of Civil Procedure 26(e)(2) because it was not disclosed until the weekend before trial. This is a non-starter for the plaintiffs.

the plaintiff is less favorable than the offer. *See United States v. Trident Seafoods Corp.*, 92 F.3d 855, 859 (9th Cir. 1996), *cert. denied* 519 U.S. 1109 (1997).

Rule 68 costs are defined by 28 U.S.C. §1920 unless the substantive law which governs a particular case authorizes the award of additional costs. *See Phillips v. Bartoo*, 161 F.R.D. 352, 354 (N.D. Ill. 1995). Section 1920 provides:

> A judge or clerk of any court of the United States may tax as costs the following:
>
> (1) Fees of the clerk and marshal;
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in this case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

Here, because DaimlerChrysler's offer of judgment was more favorable than the $3,000 judgment entered against it and the costs are not contested, it is awarded those costs.

To conclude, the Court **DENIES** Plaintiffs' motion for new trial and the motion to alter or amend the judgment (Doc. 194). The Court also **GRANTS** DaimlerChrysler's motion for costs (Doc. 195) in the amount of **$4,962.63** pursuant to Rule 68(d). The Clerk is **DIRECTED** to enter an amended judgment.

**IT IS SO ORDERED.**

DATED: 03/06/09

s/ *G. Patrick Murphy*
G. Patrick Murphy
United States District Judge